UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRITTANI MARIE KIRTON, *as administrator of the estate of Kwasi Kirton*,

Plaintiff,

v.

CITY OF MOUNT VERNON, *et al.*,

Defendants.

No. 24-CV-9395 (KMK)

OPINION & ORDER

---

Appearances:

Rehan Nazrali, Esq.
New York, NY
*Counsel for Plaintiff*

Hugo Ortega, Esq.
Tanner & Ortega, LLP
New York, NY
*Counsel for Plaintiff*

Andrew C. Quinn, Esq.
Lalit K. Loomba, Esq.
Marykate Quinn, Esq.
Steven J. Bushnell, Esq.
The Quinn Law Firm, PLLC
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Brittani Kirton ("Plaintiff"), in her capacity as administrator of Kwasi Kirton's ("Kwasi")

estate, brings this claim against the City of Mount Vernon, Mount Vernon Police Department

("MVPD"), and several named and unnamed officers ("Individual Defendants") (collectively,

"Defendants"), alleging they falsely arrested, unlawfully detained, and maliciously prosecuted

Kirton for a 2020 shooting in which he did not participate. Before the Court is Defendants'

Motion to Dismiss the Second Amended Complaint.  For the following reasons, the Court denies the Motion as to Plaintiff's malicious prosecution claim against the Individual Defendants and the failure-to-intervene claim against the Individual Defendants derivative of the malicious prosecution claim.  The Court grants the Motion as to the remaining claims and all claims against MVPD.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Second Amended Complaint and assumed true for the purposes of the Motion to Dismiss.  Kwasi was a resident of Mount Vernon, New York. (2d Am. Compl. ("SAC") ¶ 18 (Dkt. No. 36).)  A shooting took place in Mount Vernon on March 26, 2020.  (*Id.* ¶ 25.)  Kwasi was not involved in it, and no physical evidence, contemporary eyewitness, or forensic evidence connected him to the shooting.  (*Id.* ¶ 26.)  Kwasi was nevertheless arrested and charged in connection with the shooting on May 15, 2020.  (*Id.* ¶ 27.)  On June 19, 2020, Magistrate Judge Smith "concluded that probable cause ha[d] been established that [Kwasi] committed the crime charged in the [then-]pending [criminal] [c]omplaint" based on testimony from Detective Ronnie Williams identifying Kwasi as the shooter based on security camera footage of the incident.  *United States v. Kirton*, No. 20-CR-322, 2020 WL 3412940, at *2 (S.D.N.Y. June 19, 2020).  A federal grand jury indicted Kwasi for firearms-related offenses a week later.  Indictment at 1, *United States v. Kirton*, (S.D.N.Y. June 26, 2020) (No. 20-CR-322).[1]

---

[1] The Court may take judicial notice of both the probable cause finding and the indictment at the motion to dismiss stage.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 397–98 (2d Cir. 2006).

By the time Kwasi was arrested by the MVPD, the victim of the shooting, Jarred James, "had already informed investigators that [Kwasi] was not the shooter and that none of the individuals in photographic arrays [presumably presented to James] were responsible" for the shooting. (*Id.* ¶ 28.) "This exculpatory evidence," however, "was never disclosed to [Kwasi's] defense counsel" or to prosecutors. (*Id.* ¶¶ 29, 65.) "[M]otivated by malice and a desire to protect the reputation and interests of law enforcement institutions," the individual officers named as defendants "actively suppressed or failed to disclose exculpatory and impeachment material . . . and fabricated or ignored key evidence in furtherance of the prosecution." (*Id.* ¶¶ 40, 53.) This was also done, Plaintiff alleges, pursuant to the City of Mount Vernon's "municipal policies, practices, or customs, including" "[a] custom or policy of tolerating or encouraging the initiation of criminal charges without probable cause," "[a] failure to properly train, supervise, and discipline officers regarding investigative standards, prosecutorial disclosures, and constitutional rights," and "[a] pattern of withholding exculpatory evidence from prosecutors and defense counsel." (*Id.* ¶ 57.) Plaintiff contends this is consistent with a "December 2024 report from the United States Department of Justice ('DOJ') confirm[ing] that the MVPD engaged in routine civil rights violations," (*id.* ¶ 77), though the report's conclusions as to MVPD's constitutional violations have since been retracted, (*id.* ¶ 78), and a report from the Westchester County District Attorney's Office detailing the vacature of several convictions stemming from a narcotics operation, (*id.* ¶ 80).

Kwasi spent 19 months in pretrial detention while awaiting trial on the charges, during which he "endured . . . emotional and physical suffering, reputational harm, and profound psychological trauma." (*Id.* ¶ 8.) After a three-day trial and "less than fifteen minutes of jury

deliberation," a jury acquitted Kwasi on December 15, 2021.  (*Id.* ¶ 30.)  Kwasi passed away on March 5, 2022.  (*Id.* ¶ 9.)

B.  Procedural History

Plaintiff filed the first Complaint on December 10, 2024.  (*See* Compl. (Dkt. No. 1).) Plaintiff filed an Amended Complaint on April 25, 2025.  (*See* Am. Compl. (Dkt. No. 29).) Plaintiff filed the Second Amended Complaint on July 9, 2025.  (*See* SAC).  Defendants moved to dismiss on August 15, 2025.  (*See* Mot. to Dismiss (Dkt. No. 37); *see also* Mem. in Supp re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 39).)  Plaintiffs filed their memorandum in opposition on October 14, 2025.  (Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Opp.") (Dkt. No. 42).)  Defendants replied on October 31, 2025.  (Reply in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 43).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

### B.  Analysis

Plaintiff asserts several constitutional claims against the City of Mount Vernon and its police department, and against named and unnamed Individual Defendants.  Though there is substantive overlap, the Court begins with the claims against the Individual Defendants, then addresses the unique considerations that claims against the municipal defendants present.

#### 1.  Individual Defendants

##### a.  Abuse of Process

Plaintiff's first cause of action is for abuse of process under § 1983 against all defendants. (SAC ¶¶ 35–47.)  The Second Circuit recognizes abuse of process as actionable under § 1983. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ("We, therefore, hold that section 1983 liability may lie for malicious abuse of criminal process.").  New York state law supplies the elements of a § 1983 abuse of process claim, which "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.*

The statute of limitations for Plaintiff's Section 1983 claims is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) ("In section 1983 actions, the applicable limitations period is found in the general residual state statute of limitations for personal injury actions, and the parties here agree that in this case that period is three years." (citations and

quotation marks omitted, alterations adopted)); *see also Kane v. Mt. Pleasant Cent. Sch. Dist.*, 80

F.4th 101, 104 (2d Cir. 2023) ("Under well-settled law, claims under Section 1983 . . . are

governed by New York's general statute of limitations for personal injury actions under N.Y.

C.P.L.R. § 214(5), which is three years."). Defendants argue the abuse of process claim is time-

barred because it accrued when Kwasi was arrested, more than three years before Plaintiff

brought this action. (Defs.' Mem. 6–7.) In the Complaint, Plaintiff contends the abuse of

process "claim accrued on or about December 15, 2021, when Kwasi was acquitted and released

from custody following a jury trial, and at which time the full extent of the injury caused by

Defendants' abuse of process became manifest," and relies on the same event as the basis for the

claim's accrual in his opposition papers. (SAC ¶ 42; Pl.'s Opp. 7.)

For the proposition that "abuse-of-process claims accrue upon favorable termination of

the criminal case," (Pl.'s Opp. 7), Plaintiff cites *Hadid v. City of New York*, 730 F. App'x 68, 71

(2d Cir. 2018) (summary order). But that is not what *Hadid* held. In fact, the Second Circuit

held in a summary order that the district court "did not err . . . in dismissing [the plaintiff's]

abuse of process claims as time barred" because those claims "accrued on . . . the day that he was

*arrested* on [the underlying criminal] charges." *Id.* (emphasis added). In *Hadid*, the plaintiff

argued that in his case, the abuse of process claim could not have accrued until his conviction

was overturned on appeal to avoid running afoul of *Heck v. Humphrey*, 512 U.S. 477 (1994),

which "stands for the principle that, where a § 1983 claim would be factually inconsistent with

an extant criminal conviction, the claim does not accrue until the conviction is overturned."

*Hadid*, 730 F. App'x at 71. However, the Second Circuit explained that the abuse of process

claim in *Hadid* was *not* "factually inconsistent with [the plaintiff's] perjury conviction," so the

plaintiff "could have pursued this claim while the perjury prosecution was pending or while his

7

conviction stood [without] amount[ing] to a collateral attack on the validity of the conviction."
*Id.*

As courts in the Second Circuit have repeatedly recognized, an abuse of process claim will not infrequently accrue on the plaintiff's arrest. *See, e.g.*, *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 515 (S.D.N.Y. 2022) ("Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion—typically at arrest—against the plaintiff." (quoting *Anderson v. Cnty. of Putnam*, No. 14-CV-7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016)); *accord Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (same). But "[i]n some circumstances, a plaintiff may not know about the wrong related to an abuse of process claim until *after* the arrest," for example, by not learning about the "inappropriate collateral objective" until much later in the proceedings, so the claim would accordingly accrue after the arrest. *McDaniel*, 585 F. Supp. 3d at 515 (emphasis added). Drawing all inferences in Plaintiff's favor, as the Court must at this stage, Plaintiff is claiming Kwasi's arrest alone was insufficient to put him on notice of an improper collateral purpose for his prosecution, but something at the time he was *acquitted* gave him the requisite notice to start the statute of limitations clock. *See, e.g.*, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 617 (E.D.N.Y. 2017) (holding plaintiff's abuse of process claim did not accrue until the case against her was dismissed, because she had alleged a collateral purpose of her prosecution "was to use her as leverage to get her husband to plead guilty" for another crime, and her dismissal followed her husband's conviction).[2] But the Complaint leaves it a mystery what, exactly, about Kwasi's

---

[2] The Court accordingly disagrees with Defendants' contention that "the alleged injury was obvious to [Kwasi]—he was sitting in jail—and that is sufficient to accrue the abuse of process claim," because each element of an abuse of process claim will not *necessarily* be apparent immediately upon arrest. (Defs.' Mem. 7.)

acquittal put him on notice of his abuse of process claim. To the extent the Complaint suggests that the withholding of *Brady* material or other "investigatory misconduct" following Kwasi's arrest put him on notice of an improper purpose, nothing in the Complaint indicates when Kwasi learned of it. (*See* SAC ¶¶ 37–38.) Plaintiff is not required, however, to plead compliance with the statute of limitations in the Complaint, so this would be a fact issue more suited for a later phase in the case. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses.").

However, even assuming Plaintiff's abuse of process claim is timely because of an unstated event at Kwasi's acquittal that put him on notice of his claim, the Court still dismisses it on the merits. To satisfy the third element, a plaintiff bringing an abuse of process claim "must claim that [the defendants] aimed to achieve a collateral purpose *beyond or in addition to his criminal prosecution*." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (emphasis added); *see also Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (per curiam) (same (citing *Savino*, 331 F.3d at 77)). For abuse of process claims, the Second Circuit distinguishes between an improper *motive*—that is, seeking only to convict or prosecute somebody, but for malicious *reasons*—and an improper *purpose*—that is, seeking some end external to the criminal process. *See Savino*, 331 F.3d at 77 ("[Plaintiff] alleges that his investigation and arrest . . . was solely motivated to seek vindication for the [City's] great political embarrassment . . . . Although this passage does allege that the [defendants] acted with an improper *motive*, [plaintiff] has not presented any evidence that they had an ulterior *purpose or objective*. Accordingly, [plaintiff] has failed to state a claim for abuse of process[.]");

*Caraballo v. City of New York*, 726 F. Supp. 3d 140, 167 (E.D.N.Y. 2024) ("Examples of a collateral objective include the infliction of economic harm, extortion, blackmail, and retribution." (internal quotation marks and citation omitted)); *VanZandt v. Fish & Wildlife Serv.*, 524 F. Supp. 2d 239, 246 (S.D.N.Y. 2007) ("[T]he complaint is sufficient to allege that [defendant] abused the warrant process in order to steal valuable property from [p]laintiffs[.]").

Here, Plaintiff alleges no improper *purpose* outside the proceedings of Kwasi's prosecution and conviction. She only alleges a flawed *motive* in pursuing them, and then only in a conclusory fashion. (*See* SAC ¶ 40 ("The initiation and continued use of the legal process was thus motivated by malice and a desire to protect the reputation and interests of law enforcement institutions, rather than to serve justice."); *id.* ¶ 38 ("The process was employed not to investigate or adjudicate criminal conduct, but rather to conceal investigatory misconduct, suppress exculpatory evidence, and justify an arrest that lacked probable cause.").) And that does not suffice because a "malicious motive alone does not give rise to a cause of action for abuse of process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (citing *Savino*, 331 F.3d at 77); *see also Crews v. Cnty. of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007) ("Because plaintiffs have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute [plaintiff], the abuse of process claim fails."); *see also Dotson v. Farrugia*, No. 11-CV-1126, 2012 WL 996997, at *8 (S.D.N.Y. Mar. 26, 2012) ("[P]laintiff argues that the allegations . . . were lies made to retaliate against the Plaintiff for his perceived affront, and an effort to cover up the wrongdoing of the [officers] . . . [this] allege[s] only an improper motive, which is not actionable, rather than an ulterior collateral purpose or objective, which may be." (citation and quotation marks omitted)).

10

Accordingly, the Court dismisses Plaintiff's abuse of process claim because even if it is timely, it fails to state a claim on the merits.

### b. Malicious Prosecution

Plaintiff's next cause of action is for malicious prosecution—a closely related but distinct tort from abuse of process. (SAC ¶¶ 48–59.) "To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law," the latter of which "requires a plaintiff to show (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (citations and internal quotation marks omitted). Unlike the abuse of process claim, "a malicious prosecution claim accrues when the underlying prosecution terminates in favor of the accused," so there is no issue as to whether this claim is timely because Kwasi was acquitted fewer than three years before Plaintiff brought this claim. *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). (*See* SAC ¶ 7.)

The first and second elements here are readily met because Plaintiff alleges Kwasi was arrested and prosecuted (and that the Individual Defendants played a role in both),[3] and the prosecution ended in his acquittal. (*See* SAC ¶¶ 7–11.)

---

[3] *See Phelps v. City of New York*, No. 04-CV-8570, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) (holding that a police officer may qualify as initiating prosecution where they "cause[d] the initiation of criminal process," even if they did not actually effectuate the arrest (italics omitted)).

Although Defendants contend otherwise, (*see* Defs.' Mem. 4–6), Plaintiff does allege the personal involvement of each Individual Defendant in initiating Kwasi's malicious prosecution, as she must. *See Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *17 (S.D.N.Y. Sept. 29, 2023) ("It is well settled in this Circuit that personal involvement of defendants in

11

The third element—lack of probable cause for commencing the proceeding—is a closer call. Plaintiff clearly alleges his prosecution was initiated without probable cause because Kwasi "had no connection to the shooting, and no physical evidence, eyewitness identification, or forensic link tied him to the crime," and the shooter told investigating officers Kwasi was not responsible. (SAC ¶¶ 26, 6.) But here, a magistrate judge found in a preliminary hearing that there was probable cause that Kwasi committed the crime he was charged with, and a grand jury indicted him with that crime. *See Kirton*, 2020 WL 3412940, at *2; Indictment at 1, *United States v. Kirton*, (S.D.N.Y. June 26, 2020) (No. 20-CR-322). That creates a "presumption of probable cause," and "it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 72–73 (holding grand jury indictment creates rebuttable presumption of probable cause); *see also Dirienzo v. United States*, 690 F. Supp. 1149, 1156 n.6 (D. Conn. 1988) (holding finding of probable cause by magistrate judge creates rebuttable presumption of probable cause). That is true even at the motion to dismiss stage. *See Hadid*, 730 F. App'x at 71 n.1 ("[The Second Circuit has] routinely affirmed dismissals of malicious prosecution claims at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment.") (collecting cases); *see also Wright v. Rutulante*, No. 16-

---

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)). (*See* SAC ¶ 22 ("Defendants Detective Lindsay Braig, Detective Marlon Talbott, Detective Darius Mitchell, Detective Benny Gutierrez, and Officer Ronnie Williams were all employed by the MVPD at all relevant times and were personally involved in the investigation, suppression of exculpatory evidence, and malicious prosecution of Mr. Kirton."); *id.* ¶ 23 ("Despite knowing that the victim, Jarred James, had identified that Mr. Kirton was not the shooter and that 'none of the people in the pictures' were responsible, *these officers* failed to disclose this critical information[.]" (emphasis added)). Accordingly, the Complaint does "allege which defendant was involved in the alleged unlawful conduct," (Defs.' Mem. 6 (quotation marks omitted))—each defendant named above was.

CV-10068, 2018 WL 1578172, at *6 (S.D.N.Y. Mar. 27, 2018) (dismissing a § 1983 malicious prosecution claim where the complaint failed to overcome the presumption of probable cause from a grand jury indictment). Defendants argue Plaintiff has failed to overcome the presumption of probable cause. (*See* Defs.' Mem. 9.)

However, the Court finds the Complaint makes a plausible showing to rebut this presumption. Specifically, Plaintiff contends the allegations that "officers suppressed the victim's exonerating statement; coerced or manufactured identifications; and forwarded false or misleading reports[4] . . . easily rebut any presumption and state lack of probable cause." (Pl.'s Opp. 8.)[5] While the Complaint offers these allegations with little more concreteness than the opposition brief describes them, and a "conclusory belief that the evidence presented" in procuring his indictment was somehow defective is insufficient, *Wright*, 2018 WL 1578172, at

---

[4] The Court notes there is no allegation in the Complaint that any Defendant "coerced or manufactured identifications" of Plaintiff. (Pl.'s Opp. 8; *see generally* SAC.) There are allegations that a DOJ report confirmed Mount Vernon police officers have done so in the past, (*see* SAC ¶ 77), but no allegations of that in this case. Likewise, there is no allegation of "forward[ing] false or misleading reports" in *Plaintiff's* case, although Plaintiff does allege that is detailed in the DOJ report. (*See generally* SAC ¶¶ 72–108.)

[5] Plaintiff also cites *Savino* for the proposition that the "rebuttable presumption of probable cause . . . collapses when officers mislead prosecutors, fabricate evidence, or suppress exculpatory information." (Pl.'s Opp. 8.) What *Savino* in fact says is that sparse allegations to that effect are insufficient to shift the burden on summary judgment. 331 F.3d at 72–73 ("The District Court held that, even though Savino was indicted . . . he adequately rebutted the presumption of probable cause . . . because a reasonable jury could find that (1) defendants had acted in bad faith by withholding exculpatory evidence from the prosecuting attorney . . . and (2) if this evidence *had* been presented to the grand jury, Savino would not have been indicted. . . . We believe the District Court's analysis is flawed because it apparently ignored the rule that it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment. . . . The [d]istrict [c]ourt erroneously shifted this burden to defendants by permitting Savino to rebut the presumption of probable cause with mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." (quotation marks and citation omitted)).

13

*6, the Court must draw all reasonable inferences in Plaintiff's favor on a motion to dismiss, *see Daniel*, 992 F. Supp. 2d at 304 n.1.  Here, it is reasonable to infer from the facts alleged that the Individual Defendants, who had the victim's statement exonerating Kwasi in their possession and "suppressed" it, did not present that statement to prosecutors or testify about it to the grand jury when procuring the indictment of Kwasi—that is intuitive from what it means to "suppress" something.[6]  (SAC ¶ 53 (alleging the "[i]ndividual [d]efendant officers actively suppressed or failed to disclose exculpatory and impeachment material"); *id.* ¶ 65 ("Defendants never disclosed this material exculpatory evidence to prosecutors[.]").)  And where exculpatory evidence of a great enough weight to affect a probable cause finding is withheld from a grand jury or prosecutors, courts have found the presumption of probable cause rebutted.  *See Antler v. Those Certain Underwriters at Lloyd's*, No. 11-CV-1915, 2013 WL 12651624, at *4 (S.D.N.Y. Mar. 21, 2013) (holding plaintiff "plausibly alleged that Defendants misrepresented evidence, withheld evidence, or otherwise acted in bad faith such that the presumption of probable cause has been rebutted" when without the misrepresentations, there "might not have been enough for the [g]rand [j]ury to find probable cause"); *Cannistraci v. Kirsopp*, No. 10-CV-980, 2012 WL 1801733, at *19 (N.D.N.Y. May 16, 2012) ("[T]he fact that [d]efendant allegedly withheld from the district attorney and the grand jury exculpatory evidence overcomes the presumption of probable cause and could allow a reasonable jury to find that [d]efendant acted with malice."); *see also Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 163 (2d Cir. 1998) (holding a district court correctly "informed the jury that the indictment was 'evidence' of probable cause, which could be rebutted by, *inter alia*, proof that the officers had misrepresented or concealed material

---

[6] "[T]o keep from public knowledge: such as (a): to keep secret[;] (b): to stop or prohibit the publication or revelation of." *Suppress*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/suppress (accessed Mar. 12, 2026).

evidence" from the grand jury or prosecutors).  Here, the shooter's affirmative statement that

Kwasi was not involved could have "necessarily rule[d] out [his] involvement in the shooting" so

as to rebut the presumption of probable cause, depending on what other evidence was available

and presented (unlike, for example, if the failure of an eyewitness to identify Kwasi were not

presented).  *See Bonds v. City of New York*, No. 12-CV-1772, 2014 WL 2440542, at *8

(E.D.N.Y. May 30, 2014); *see also Cabble v. City of New York*, No. 04-CV-9413, 2010 WL

1222035, at *3 (S.D.N.Y. Mar. 29, 2010) (finding a plaintiff's allegations of failure to present

exculpatory evidence *did* rebut the presumption of probable cause where there was a reasonable

inference that the withheld information could have "caused the jurors to discredit the [grand jury]

witnesses' testimony," making it "reasonable to believe that the grand jury would not have

indicted [p]laintiff"); *Wright*, 2018 WL 1578172, at *6 (finding the presumption of probable

cause was not rebutted where plaintiff only alleged certain grand jury testimony was misleading

or unsubstantiated).  Accordingly, the allegations in the Complaint suffice at this early stage to

plausibly rebut the presumption of probable cause and adequately plead the third element of

malicious prosecution.

The fourth and final element is actual malice.  "[M]alice may be shown by proving that

the prosecution complained of was undertaken from improper or wrongful motives, or in reckless

disregard of the rights of the plaintiff."  *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d

Cir. 2010) (citing *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)); *see also Castro v. Cnty. of

Nassau*, 739 F. Supp. 2d 153, 169–70 (S.D.N.Y. 2010) ("Actual malice 'does not require a

plaintiff to prove that the defendant was motivated by spite or hatred' but instead that he initiated

the criminal proceeding 'due to a wrong or improper motive, something other than a desire to see

the ends of justice served.'" (quoting *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994)).

While the improper motives Plaintiff alleges, including the Individual Defendants' attempts to conceal their own misconduct and retroactively justify Kwasi's wrongful arrest, could not sustain his abuse of process claim, they *can* sustain the malice element of a malicious prosecution claim. (*See, e.g.*, SAC ¶¶ 38 ("The process was employed . . . to conceal investigatory misconduct . . . and justify an arrest that lacked probable cause.").) *See Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 296 (S.D.N.Y. 2001) (finding "probable cause for plaintiff's prosecution was so totally lacking as to justify an inference of malice" where prosecution was initiated "to further support" the closing of plaintiff's business and retroactively justify an "unreasonable decision to arrest" plaintiff); *cf. Abreu v. City of New York*, No. 04-CV-1721, 2006 WL 401651, at *4 (E.D.N.Y. Feb. 22, 2006) ("Penalized [by § 1983] are law enforcement officers who abuse their positions of power by substituting enmity for investigation—e.g., arresting and charging an individual without cause[.]" (citation omitted)).

The Court accordingly denies Defendants' Motion as to Plaintiff's malicious prosecution claim.

### c.  Denial of Due Process

Plaintiff next asserts a § 1983 due process claim against all Defendants. (SAC ¶¶ 60–71.)  The only nonconclusory allegation here as distinct from the malicious prosecution claim is that Defendants suppressed or hid the victim's purportedly exonerating statement from Kwasi, and therefore violated *Brady v. Maryland*, which requires disclosure to a criminal defendant of exculpatory material known to the government.[7]  373 U.S. 83 (1963).

---

[7] The remaining allegations are too vague to sustain the due process claim.  Plaintiff argues the actionable misconduct for this claim included "[w]ithholding material exculpatory and impeachment evidence," which the claim provides an example of—the allegedly withheld victim statement.  (SAC ¶ 63.)  But the claim also glancingly mentions "[f]abricating probable cause for arrest and prosecution," "[f]ailing to conduct a constitutionally adequate investigation," and

The due process right recognized by *Brady* and its progeny is the right each criminal defendant has to exculpatory evidence sufficiently far in advance for use at trial.  *See United States v. Middendorf*, No. 18-CR-36, 2018 WL 3956494, at *3 (S.D.N.Y. Aug. 17, 2018) ("Under *Brady*, the Government has an obligation to disclose to criminal defendants any material exculpatory information 'in time for its effective use at trial.'" (quoting *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001)); *see also Tate v. Wood*, 963 F.2d 20, 24 (2d Cir. 1992) ("A criminal defendant has a well-established due process right to require the prosecution to give him whatever material exculpatory evidence it has.").  The suppression of such evidence rises to a violation of due process if it can be said the outcome of the trial would have been different had the exculpatory evidence been provided to the defendant.  *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

Here, there is no means to measure if the suppression of the victim's statement exonerating Kwasi would have led to a different verdict because he was acquitted after his trial. Accordingly, "the verdict acquitting [Kwasi] of the criminal charges against him negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471 (S.D.N.Y. 2009); *accord McClean v. Cnty. of Westchester*, No.

---

"[c]ontinuing to pursue criminal charges in the absence of *any* reliable or admissible inculpatory evidence," with no specificity, examples, or support beyond these bare allegations.  (*Id.* (emphasis added).)  The Court accordingly focuses its discussion only on the alleged *Brady* violation because the remaining examples are not pled with sufficient facts to raise any claims based on them above a speculative level.  *See Twombly*, 550 U.S. at 555; *see also Hoy v. Inc. Vill. of Bayville*, 765 F. Supp. 2d 158, 161 (E.D.N.Y. 2011) ("[T]he Court finds that plaintiffs' conclusory due process allegations cannot survive a motion to dismiss.").

17-CV-4492, 2018 WL 6329420, at *18 (S.D.N.Y. Dec. 3, 2018) ("Courts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial." (citing *Tiscareno v. Frasier*, 603 F. App'x 672, 679 (10th Cir. 2015))).

Because Kwasi's acquittal renders the *Brady* claim under Section 1983 inactionable, the Court dismisses the § 1983 due process claim.

### d.  Failure to Intervene

Plaintiff brings failure to intervene claims against the same Individual Defendants for the same underlying claims.[8]  (*See* SAC ¶¶ 97–108.)  "A failure to intervene claim is contingent only on the underlying claim," so "there can be no failure to intervene claim without a primary constitutional violation." *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) (citations omitted); *accord Makell v. Cnty. of Nassau*, 599 F. Supp. 3d 101, 110 n.9 (E.D.N.Y. 2022) ("[A] failure to intervene claim fails if there is no constitutional tort in which a defendant could have intervened.").  Here, the Court has found the only underlying Section 1983 violation alleged in the Complaint is Plaintiff's malicious prosecution claim, so the Court focuses only on that claim in assessing failure to intervene.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

---

[8] While a single defendant cannot be held liable both for a primary § 1983 violation and for failing to intervene in her own § 1983 violation, at the pleading stage, asserting both against the same defendant is permissible pleading in the alternative under Federal Rule of Civil Procedure 8(d)(2). *See Martinez v. City of New York*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) ("A plaintiff may plead direct liability and failure to intervene in the alternative."); *Rizk v. City of New York*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020) ("Obviously, a person who is held liable under a theory of direct participation in the constitutional violation cannot also be held liable for failure to intervene." (citation omitted)).

enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)); *see also Valverde v. Folks*, No. 19-CV-8080, 2020 WL 5849515, at *7 (S.D.N.Y. Sept. 30, 2020) (same); *Bouche v. City of Mount Vernon*, No. 11-CV-5246, 2012 WL 987592, at *5 (S.D.N.Y. Mar. 23, 2012) (same). "The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." *Figueroa v. Mazza*, 825 F.3d 89, 107–08 (2d Cir. 2016) (quoting *O'Neill*, 839 F.2d at 11–12). Because "[w]hether an officer was capable of preventing the harm and had sufficient time to intercede" is highly circumstance- and fact-driven, courts generally treat it as "an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Gardner v. City of New York*, No. 16-CV-6476, 2021 WL 3848112, at *7 (E.D.N.Y. Aug. 27, 2021) (quoting *Branen*, 17 F.3d at 557).

The facts in the Complaint and plausible inferences that can be drawn in Plaintiff's favor suffice to make out each element. As a threshold, see *supra*, Plaintiff has alleged an underlying wrong in which certain defendants failed to intervene—Kwasi's malicious prosecution. As to the first element, Plaintiff alleges "Defendant Police Officers Detective Lindsay Braig, Detective Marlon Talbott, Detective Darius Mitchell, Detective Benny Gutierrez, and Police Officer Ronnie Williams . . . were either present at key stages of the investigation and prosecution or . . .

19

otherwise . . . became aware that [Kwasi] had been misidentified," and "failed to intervene despite being in a position to do so." (SAC ¶¶ 99, 102–03; *see id.* ¶ 100 ("[T]hese Defendant Officers were aware . . . that the victim affirmatively stated that [Kwasi] was not the shooter— and that this . . . information was not disclosed to . . . the prosecuting attorney."); *see supra* note 3 (explaining the Complaint adequately alleges these Defendants' personal involvement).) As to the second element, a reasonable person in each Defendants' position would know that intervention was appropriate, *i.e.*, that the victim's statement should have been disclosed to the prosecutors in Kwasi's case (if not to the grand jury) considering it has long been "clearly established under Supreme Court . . . case law . . . that police officers satisfy [the government's] duty [to disclose] by turning over exculpatory evidence to prosecutors." *Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 337751, at *19 (E.D.N.Y. Jan. 27, 2016) (quoting *Poventud v. City of N.Y.*, No. 07-CV-3998, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015)); *see also Limone v. United States*, 271 F. Supp. 2d 345, 356 (D. Mass. 2003) ("There can be no doubt that . . . law enforcement officers have a constitutional duty to disclose exculpatory evidence to prosecutors."). And as to the third element, Plaintiff alleges no Defendant with knowledge of the victim's statement took any steps to intervene by coming forward with the statement, or otherwise. (*See* SAC ¶ 101 ("[T]hese Defendant Officers failed to take reasonable steps to disclose or correct the record[.]").)

Because Plaintiff has alleged the individual officers had an opportunity to intervene in what she has adequately claimed was a malicious prosecution, and did not intervene when a reasonable person in their position would do so, the Court denies the Motion as to this count.

2.  City Defendants

a.  *Monell* Liability

Plaintiff asserts that the City of Mount Vernon is liable for each of these constitutional torts on a *Monell* theory, but because only the malicious prosecution and derivative failure to intervene claims survive, the Court only considers those when evaluating the *Monell* claim.[9] (*See* SAC ¶¶ 44, 57, 69, 106.)  "A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).  The point of *Monell*'s strictures is to ensure municipalities are held accountable for *their*

_____

[9] The third element of a *Monell* claim requires an underlying violation of a plaintiff's constitutional rights—a policy or custom, however reproachable, is inactionable under *Monell* unless a plaintiff's rights are violated.  *See Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008) ("The first [§ 1983] claims depend on a single threshold question: did the officers' actions violate [plaintiff's] constitutional rights?  If they did not, then the City cannot be liable to [plaintiff] under § 1983, regardless of whether the officers acted pursuant to a municipal policy or custom.").

Plaintiff asserts his *Monell* claims here in two ways—first, as a basis to hold the City liable for each of the specific claims, (*see* SAC ¶¶ 35–71, 97–108), and second, as a standalone cause of action, (*id.* ¶ 72–96).  Plaintiff's "*Monell* claims [that] are derivative of [the] claims against the [I]ndividual [D]efendants" that are "dismissed as against the [I]ndividual [D]efendants must also be dismissed as against the City" of Mount Vernon.  *Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (summary order); *see also McClanahan v. Kelly*, No. 12-CV-5326, 2014 WL 1317612, at *7 (S.D.N.Y. Mar. 31, 2014) ("[W]hen the claims against an individual defendant are dismissed, the claims against the City must also be dismissed, given that a [p]laintiff's *Monell* claims are derivative of his claims against the individual defendants." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

21

particular failures, rather than those of individual officers.  *See Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) (noting that a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees").

First, Plaintiff must plausibly allege the existence of a municipal policy or custom relevant to her case.  "A 'policy' or 'custom' can be demonstrated in a variety of ways." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (citing *Buari*, 530 F. Supp. 3d at 398).  These include:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Plaintiff largely relies on a Department of Justice ("DOJ") report about practices in the Mount Vernon Police Department at the time of Kwasi's prosecution and arrest in substantiating the policy-or-custom element of his *Monell* claim.[10]  That report found "numerous plausible

---

[10] Defendants contend the Court should disregard any mention of the report in the Complaint because it was retracted following a change in administrations.  (Defs.' Mem. 19).  But the unexplained "retraction" was only as to the report's legal conclusions and expressed no view as to the underlying facts in the report.  *See Press Release*, U.S. Dep't of Just. (May 21, 2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and [https://perma.cc/5SF7-YXGG] (announcing the DOJ was "closing its investigations into, and retracting the Biden administration's findings of constitutional violations on the part of" MVPD).  Two courts in this District confronted with the same report referenced in claims against Mount Vernon after the DOJ's announcement found "the factual evidence referenced in the DOJ's report—including officer interviews and internal admissions—may still prove relevant, even if the agency has withdrawn its legal conclusions." *See Anderson v. City of Mount Vernon*, No. 23-CV-3963, 2025 WL 2773144, at *7 (S.D.N.Y.

allegations that MVPD . . . knowingly misidentified suspects" and incidents involving "problematic identification[s] or discrepancies."  Investigation of the Mount Vernon Police Department 23, U.S. Dep't of Just. (Dec. 12, 2024) (available at https://www.justice.gov/crt/media/1379866/dl [https://perma.cc/VES3-MNRK]) [hereinafter DOJ Report].[11]  Those incidents were downstream of MVPD's lack of "adequate policies in place to guide officer action," inadequate "train[ing] . . . with respect to . . . arrests," a lack of guidance for internal affairs investigators on how to "obtain and analyze evidence," and issues with its "review of the seizure of evidence and identification of suspects."  DOJ Report 26, 29, 23.  The Complaint also alleges a number of other policies or customs in Mount Vernon referenced in the report, but that have nothing to do with the allegations involving Kwasi's malicious prosecution.  (*See, e.g.*, SAC ¶ 80 (issues in narcotics cases); *id.* ¶ 81 (strip and cavity searches, drug planting, warrant fabrication, cursory investigations); *id.* ¶ 82 (racial targeting).)  Plaintiff also references a Westchester County District Attorney's Office report announcing the Office would vacate and dismiss 27 convictions and charges stemming from a narcotics buy operation.  (SAC ¶ 80.)  *See* Westchester Cnty. Dist. Atty.'s Off., Report on the Review of Convictions Stemming from a 2017 Mount Vernon Undercover Narcotics Operation (May 10, 2023) (available at https://www.westchesterda.net/images/stories/pdfs/2023/

---

Sept. 29, 2025); *see also Hodge v. City of Mount Vernon*, No. 25-CV-2736, 2026 WL 637092, at *9 (S.D.N.Y. Mar. 6, 2026) (same).  "Therefore, the Court will consider those facts alleged in the Report as incorporated into the Amended Complaint."  *Hodge*, 2026 WL 637092, at *10; *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 281 n.2 (E.D.N.Y. 2000) ("The Court may consider documents incorporated by reference in the pleadings[.]").  In any event, at the motion to dismiss stage, the facts in the report remain only untested allegations.

[11] The Complaint incorporates this report by reference, so the Court may consider it in resolving Defendants' Motion.  *See MCI Worldcom*, 93 F. Supp. 2d at 281 n.2.

23

cruvacatursreport.pdf) [hereinafter WCDAO Report].  Finally, Plaintiff points to several recent federal court cases also involving *Monell* claims against the City.  (SAC ¶ 81.)

Neither of the first two means of establishing a policy or custom is met here, *see Jones*, 182 F. Supp. 3d at 158, because nothing in the referenced materials or in the SAC supports an inference that a formal policy in Mount Vernon led to Kwasi's malicious prosecution, nor does Plaintiff point to any action by a government official responsible for establishing Mount Vernon policy in the reports or in the SAC as relevant to this case.  (*See* SAC ¶¶ 72–96.)

As to the third means of establishing a custom or policy, Plaintiff has not adequately alleged—and the language of the report does not support—that there is an entrenched, widespread custom of incidents *like those in Kwasi's prosecution*.  DOJ Report 22 ("Although we do not make a finding that MVPD engages in a pattern or practice of falsifying evidence . . ."); *id.* at 23 ("[S]*everal* incidents indicate that *some* MVPD officers *may* be improperly misidentifying suspects." (emphasis added)).[12]  That is not indicative of practices like the

---

[12] Even if the Court agreed Plaintiff had sufficiently shown a widespread pattern of "improperly misidentifying suspects," DOJ Report 23, that is distinct from the constitutional foul against Kwasi that the Court found actionable here— Kwasi's malicious prosecution because of the suppression of the shooter's statement from the grand jury and prosecutors.  *See, e.g.*, *Vann v. City of Rochester*, No. 18-CV-6464, 2019 WL 2646616, at *8 (W.D.N.Y. June 27, 2019) (holding numerous examples of "reversals of convictions . . . based on prosecutorial misconduct during trial" did not relate to "the constitutional violations alleged in this case, i.e., fabrication of evidence and the presentation of false testimony"); *see also Finch v. Rapp*, 38 F.4th 1234, 1245 (10th Cir. 2022) (finding plaintiff had not adequately alleged a "custom of shooting unthreatening suspects" by pointing to more than 20 police shootings in six years with "widely varying facts and lack[ing] a common theme or pattern"); *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 811 (5th Cir. 2017) (holding examples of inadequate medical care for chronic conditions and poor sanitation in prisons were "not on all-fours" with plaintiff's claim of failure to treat him following a use-of-force incident, and so did not establish a custom of the latter). The Supreme Court drew even finer distinctions in *Connick*, holding numerous prior *Brady* violations were too dissimilar from the *Brady* violation at issue in that case to establish an actionable pattern for a failure-to-train claim.  *See Davis v. City of New York*, 959 F. Supp. 2d 324, 354 n.137 (S.D.N.Y. 2013) ("In *Connick*, the Supreme Court held that the plaintiff did 'not contend that he proved a pattern of similar *Brady* violations,' and that the four other *Brady*

24

Individual Defendants' behavior in Kwasi's case that are "so 'persistent and widespread,' or so 'permanent and settled as to constitute a custom or usage with the force of law' and to 'imply the constructive knowledge of policymaking officials.'" *McCormick v. Cnty. of Westchester*, No. 19-CV-2916, 2023 WL 2632204, at \*10 (S.D.N.Y. Mar. 24, 2023) (quoting *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021)).  Nor is Plaintiff's conclusory allegation, with no examples other than this case and no suggestion that MVPD officers had a pattern of doing so, that MVPD engaged in any "[s]uppression of exculpatory material."  (SAC ¶ 82.).  Plaintiff has also not alleged in any more than a conclusory manner that evidence in his case was fabricated, rather than suppressed.  (*See generally* SAC.) Nor does the WCDAO Report, which details a single incident unrelated to Plaintiff's case—a botched drug buy resulting in 32 charges—allow an inference that there was a widespread custom of malicious prosecutions after the withholding of exculpatory material from prosecutors and grand juries.  WCDAO Report 2.  And the three "[r]ecent federal court decisions" Plaintiff alleges "further sustain [the] *Monell* claims" here are not based on "similar or related misconduct" to his malicious prosecution—rather, they are predicated on practices like planting drugs, conducting strip or cavity searches, and fabricating evidence (rather than suppressing it from prosecutors).  (*See* SAC ¶ 81 (collecting cases).)  These examples are accordingly "too dissimilar" to the suppression to sustain "Plaintiff's theories of municipal policy or custom." *Weppner v. Cnty. of Erie*, No. 22-CV-519, 2025 WL 3214581, at \*11 (W.D.N.Y. Nov. 18, 2025).  So, Plaintiff "has not pleaded a pervasive practice that could constitute a custom by the City."

---

violations noted by the plaintiff were 'not similar to the violation at issue' and thus "could not have put [the municipality] on notice that specific training was necessary to avoid this constitutional violation." (quoting *Connick*, 563 U.S. at 63)).

*Smith v. NYC Dep't of Corr.*, No. 18-CV-7018, 2019 WL 2473524, at *6 (S.D.N.Y. June 13, 2019), *report and recommendation adopted*, 2019 WL 2866729 (S.D.N.Y. July 3, 2019).[13]

Accordingly, while the reports and facts alleged under this cause of action more than suggest <u>serious</u> misbehavior during the relevant time period—like illegal cavity searches, fabricating evidence in narcotics cases, illegal vehicle stops, or sundry other unconstitutional acts—they do not make out a custom as relevant to Kwasi's malicious prosecution. *Contrast Ringel v. Cnty. of Nassau*, No. 18-CV-1930, 2021 WL 4316715, at *13 (E.D.N.Y. Sept. 22, 2021) (holding plaintiff "must allege a more definite and specific pattern or custom" than a "pattern of tolerating police abuse, and/or of failing to discipline and supervise miscreant police officers"), *and Davis v. City of New York*, No. 12-CV-3297, 2018 WL 10070540, at *9 (S.D.N.Y. Mar. 30, 2018) ("In sum, [p]laintiff has not established a pattern of misconduct similar to the incident at issue here."), *with* SAC ¶ 85 ("News reports and social media have reinforced the depiction of MVPD as a bastion of rogue policing"); *see also Breton v. City of New York*, 404 F. Supp. 3d 799, 818 (S.D.N.Y. 2019) ("Research reports only support a plaintiff's *Monell* claims if those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage." (quotation marks and citation omitted)); *Burns v. Rensselaer Cnty.*, No. 19-CV-701, 2021 WL 1091558, at *8 (S.D.N.Y. Mar. 22, 2021) ("[T]he allegations in the [Complaint] concerning individuals at other facilities . . . are too dissimilar to the incident at

---

[13] The closest allegation in the Complaint to a pervasive practice that could constitute a custom as relevant to this case is that "[u]pon information and belief, the failure to disclose *Brady* material was not an isolated act, but part of a widespread and longstanding practice within the MVPD." (SAC ¶ 76.) But "a litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory" without explaining the basis for the belief. *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). None of the DOJ Report, WCDAO Report, nor the three lawsuits cited discuss an established and settled custom of malicious prosecution or suppression of evidence from prosecutors, defendants, and grand juries, and so do not provide that basis.

issue to allow an inference of a widespread custom or practice."). Plaintiff's Complaint therefore does not plausibly allege a "permanent and well-settled" custom of malicious prosecution akin to what happened to Kwasi. *Freudenberg v. Cnty. of Orange*, No. 23-CV-847, 2024 WL 4307176, at *9 (S.D.N.Y. Sept. 25, 2024).

Plaintiff's remaining path forward on the *Monell* claim is failure to train or supervise. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for the purposes of § 1983." *Connick*, 563 U.S. at 61. But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train," because "[t]o satisfy the statute, a municipality's failure to train . . . must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("[A] municipality may be liable for the failure to train or supervise its employees where such a failure amounts to 'deliberate indifference' to the risk that its employees will unconstitutionally apply its policies without more training or supervision." (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). "To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012); *see also Connick*, 563 U.S. at 59–61 (holding deliberate indifference "requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action"). The Second Circuit has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation";

27

(2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alteration in original) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  Importantly, all three factors must be present.  *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("In *Walker* . . ., we outlined the requirements that must be met before a local government or official's failure to act amounts to deliberate indifference.").

Plaintiff alleges the City "failed to train, supervise, and discipline its police officers adequately concerning . . . the duty to disclose exculpatory evidence and refrain from initiating prosecutions without probable cause."  (SAC ¶ 88.)  But this path falters for the same reason the previous theory does—Plaintiff does not adequately plead a pattern of breaching that "duty" that would put city officials on notice of this specific wrong, *id.*, and the SAC's allegations are either too conclusory or too attenuated from Kwasi's malicious prosecution to sustain the *Monell* claim.

"A pattern of *similar* constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train,'" *Connick*, 563 U.S. at 62, including at the pleading stage, *see D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017) (summary order) (affirming dismissal of a failure to train claim where the "complaint [did] not sufficiently allege a pattern of similar constitutional violations" and "merely insist[ed]—over and over again, in a conclusory fashion—that a pattern or custom of misconduct existed").  But the SAC and its referenced documents do not make it any more than possible that such a pattern existed.  The DOJ Report points to a number of other constitutional violations that

it *did* find were results of insufficient training, but none "similar" enough to Kwasi's case, *id.*, to show the City was deliberately indifferent to the suppression of exculpatory evidence.  The DOJ Report discusses inadequate training and supervision in use of force, (DOJ Report 12), a failure to train on cavity searches, (*id.* 14 (noting, however, that MVPD has since adopted new training and policies)), failure to train on constitutional arrests and stops (*id.* 20–21), and a general lack of training (*id.* 12 (citing a "lack of full-time training staff, standardized materials, or any systemic training for supervisors.")).  Broader training failures are not enough to sustain this claim.  *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at \*23 (S.D.N.Y. Mar. 26, 2015) (holding allegations that police officers were undertrained were "not specific as to training regarding the use of excessive force" and so did not nudge a failure to train claim based on excessive force from possible to plausible).  And the remaining examples are inapposite.  Plaintiff cannot rely solely on Kwasi's experience to establish a systemwide failure to train on malicious prosecution.  *See A.P. v. Dannhauser*, No. 23-CV-6687, 2025 WL 917233, at \*8 (S.D.N.Y. Mar. 25, 2025) ("Plaintiffs provide no factual allegations other than their own situation . . . to support this conclusory assertion.")  So, the "pattern" called for in *Connick*— where the Supreme Court held a prosecutor's *Brady* violation was insufficient to put a district attorney's office "on notice that specific training was necessary to avoid this constitutional violation"—is absent here.  *See Connick*, 563 U.S. at 62–63 ("Those four reversals could not have put Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here. None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind.").  The failure to supervise claims must fail for the same reason.  *See Douglas v. City of Peekskill*, No. 21-CV-10644, 2023 WL 2632217, at \*13 (S.D.N.Y. Mar. 24, 2023) ("To establish *Monell* liability

29

premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." (citation omitted)).

While Plaintiff has more than adequately alleged a bevy of unconstitutional acts on the part of MVPD during the relevant timeframe, these allegations do not establish a pattern of constitutional fouls like the one visited upon Kwasi.  Plaintiff has accordingly not stated a claim against the City of Mount Vernon on a *Monell* theory based on Kwasi's malicious prosecution. The Court grants Defendants' Motion as to the malicious prosecution claim against the City, and the standalone *Monell* claim against the City.

### b.  Claims against Mount Vernon Police Department

Each of Plaintiff's claims is brought against, *inter alia*, the Mount Vernon Police Department ("MVPD").  (*See* SAC ¶¶ 35–108.)  Defendants contend "[i]t is black letter law that municipal police departments are non-suable entities."  (Defs.' Mem. 4.)  Plaintiff seems to agree "MVPD is not a suable entity" and "the proper defendant" in a claim against a municipal police department "is the municipality itself."  (Opp. 6.)  Accordingly, the Court dismisses any claims in this Action against MVPD with prejudice.

### III.  Conclusion

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss as to the failure to intervene claims against the Individual Defendants and the malicious prosecution claims against the Individual Defendants, and otherwise grants it.  Any claims herein dismissed (except those against the MVPD, as discussed above) are dismissed without prejudice because, although Plaintiff has twice amended the Complaint, this is the Court's first adjudication of the issues.  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Should Plaintiff choose to file an amended complaint, she must do so within 30 days of this Opinion & Order, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the prior complaint. If Plaintiff fails to file an amended complaint, any claims that were dismissed may be dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 37).

SO ORDERED.

DATED:      March 27, 2026
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

31